*H. P. & L. Deane,* for plaintiff.

*Fessenden & Butler,* for defendants.

———◆———

ROBERT HULL, *in Equity, versus* ISAAC STURDIVANT.

A Court of Equity will not decline to enforce the specific performance of a written contract for the conveyance of real estate, because the parties have therein agreed upon a penal sum "as liquidated damages" in case of non-performance.

Nor is the *form* of the contract of any importance, if it appears by it that the parties intended it to be an agreement for the sale of lands.

*Time* is not the essence of such a contract; and, if there has been an express or implied waiver of it by the parties, the Court will decree a performance.

THIS was a BILL IN EQUITY, by which the plaintiff sought to enforce the conveyance of certain real estate to himself, by the defendant, under a contract of which the following is a copy:—

"Articles of agreement made and concluded at the city of Portland, County of Cumberland, State of Maine, this twenty-fifth day of February, in the year of our Lord one thousand

eight hundred and fifty-three, by and between Isaac Sturdivant of Exeter, N. H., on the one part, and Robert Hull, tallow chandler, of the said city of Portland, on the other part:—

" Witnesseth,— That the said Isaac Sturdivant, on his part, for the consideration hereinafter mentioned, has agreed, and does by these presents agree to and with the said Hull, of the other part, that if the said Hull, on his part, pays or causes to be paid to the said Sturdivant, one hundred dollars, in cash, this day, and one hundred dollars, in ninety days, with interest; eleven hundred and fifty dollars, in one year, with interest semi-annually; eleven hundred and fifty dollars, in two years, with interest semi-annually, together with a receipt in full for any and all dues, debts and demands of whatever name or nature, now existing against said Sturdivant. That, on the receipt of the ninety day payment, with the interest. that I, the said Sturdivant, hereby agree to give the said Hull a good and sufficient obligation, to convey, by a good and sufficient deed, all that property lying between Green and Mechanic streets in said Portland, and now occupied by the said Hull as a tallow chandlery, and to reconvey the two lots of land on R street, in said city of Portland, being the same lots which I purchased of said Hull in October, 1838. Also, to give up and return to said Hull all notes signed by him and payable to said Isaac Sturdivant, dated previous to this agreement, together with a receipt in full, for all dues, debts and demands of whatever name or nature, (provided the ninety day payment, with the interest on same, is punctually paid at maturity.) Said obligation to have full effect at the expiration of the above named two years, provided all the payments are punctually paid.

" And the said Hull, on his part, in consideration of the above named premises, has agreed, and does by these presents agree, to pay to the said Sturdivant all the above named one hundred dollars, in cash, together with the above named amounts, in ninety days, one and two years, with the interest accruing on same at maturity, together with all the taxes,

insurance, repairs, &c., &c., which may arise on the above named property from this date.

" To the true and faithful performance of the several covenants and agreements aforesaid, the parties aforesaid do hereby respectively bind themselves and their respective heirs, executors, administrators and assigns, each to the other, his executors, administrators and assigns, in the penal sum of two hundred dollars, as liquidated damages.

" In testimony whereof, they have hereunto set their hands and seals, the day and year above written.

" It is further agreed and understood by the parties, that no receipts in full are to be passed between the parties, or any notes, previous to this date, be given up by either party, until or unless the full amount of twenty-five hundred dollars, and the interest, is fully paid and accomplished, corresponding with this agreement.                        " Isaac Sturdivant,
                                              " Robert Hull."

The case was heard upon the bill, answer and proof.

It appeared in evidence that plaintiff paid the defendant one hundred dollars in advance, and one hundred dollars, with interest, within ninety days from the date of the contract, and thereupon demanded the obligation for a conveyance of the premises.  The defendant promised to give him such an obligation; but he delayed and neglected to do it, and the parties appear to have treated the original contract as sufficient. The plaintiff continued to make payments, and the defendant to receive them, until the whole amount paid was $2196,00.

The payments were not all made within the *times* stipulated in the contract.  But the defendant, at first, by a memorandum in writing on the back of the contract, extended the time of the several payments one year.  He also continued to receive payments after the extended time had expired, giving receipts therefor, " in part payment of the bond."  On the 23d day of Feb. 1856, the plaintiff paid him two hundred and fifty dollars, for which he gave a receipt, of which the following is a copy : —

"Portland, Feb'y 23, 1856.

"Received of Robert Hull, for Isaac Sturdivant, two hundred and fifty dollars, to be indorsed on his bond, dated Feb. 25, 1853, and two hundred dollars to be paid at the Bank of Cumberland in sixty days from this date or forfeit the first payment of two hundred and fifty paid this day, the said Hull to have an extension of six months from this date to pay five hundred dollars more to be indorsed on said bond, the balance of said bond to be paid in one year from this date, without infringing to either party on the privileges mentioned in said bond."

The plaintiff paid the defendant five hundred and forty dollars, Aug. 20, 1856. And, on the 14th day of February, 1857, he tendered to him eight hundred and sixty-five dollars, being the balance remaining unpaid, and demanded a conveyance of the property according to the terms of the contract. The plaintiff also, at the same time, tendered to the defendant a receipt, as specified in said contract. But the defendant declined to receive the money, and refused to make the conveyance.

The following is the only portion of the answer necessary to an understanding of the case.—

" And this defendant further saith, that the complainant is not entitled to the relief sought by him in his said bill — but if entitled to any thing, he is only entitled to recover at law the sum of two hundred dollars, in said indenture mentioned, as liquidated damages, for any breach of its terms, by this defendant, which this defendant hereby offers to pay, if the Court shall so adjudge."

*Shepley & Dana,* argued for the plaintiff.

The defendant made a breach of the conditions of his agreement. The plaintiff made the first two payments within the time stipulated, and was entitled to " a good and sufficient obligation to convey by a good and sufficient deed." The defendant, though requested, did not give him such an

obligation; but he assured the plaintiff that his rights were
sufficiently protected under the original contract. We see
that both of the parties so understood it, and payments were
made and received the same as if the obligation had been
given. The defendant will not be permitted, in a Court of
Equity, to take advantage of his own wrong in not giving
such an obligation as he agreed to give.

The agreement, of itself, is a contract for the conveyance
of the premises described. Such clearly appears, by its terms,
to have been the intention of the parties; and they have so
treated it ever since.

*Time* is not the essence of such a contract. 2 White &
Tudor's Leading Cases in Equity, 18, 26; *Jones, in Equity,* v.
*Robbins,* 29 Maine, 351. And, if it were otherwise, the time
of making the payments has been extended from time to time,
and the plaintiff has strictly complied therewith.

It is clear that defendant, as he announces in his answer,
has deluded himself with the opinion that, because the sum
of $200 is named as the liquidated damages which the party
failing to perform shall pay the other, he could take complain-
ant's money to the extent of about $2000; and, then, when
it was apparent that complainant was about to comply with
all the terms of the agreement, he could refuse to comply on
his part, and leave the complainant to recover the $200!
This is the only explanation of his course that can be offered.

But the words "liquidated damages" do not possess the
sovereign character which was ascribed to them after the pas-
sage of 8 & 9 William 3.

The law is well settled differently from what defendant
supposed. The calling a sum "liquidated damages" does not
make it so. 2 Parsons on Con. 434.

The Court must be satisfied it was not the legal intend-
ment of the agreement of Feb. 25, 1853, that, after the com-
plainant had paid the amount he has, he was to be remitted
to the penal sum of $200 as (his) "liquidated damages." The
opinion of Lord Chancellor SUGDEN, in *French* v. *Macall,* 2

D. & War., 274, well states the principle which regulates Courts of Equity in cases of this kind. "The general rule of equity," says his Lordship, "is, that if a thing be agreed upon to be done, though there is a penalty annexed to secure its performance, yet the very thing itself must be done. If a man, for instance, agree to settle an estate, and execute his bond for £600, as a security for the performance of his contract, he will not be allowed to pay the forfeit of his bond and avoid his agreement, but he will be compelled to settle the estate, in specific performance of his agreement." See, also, *Howard* v. *Hopkyns*, 2 Atk. 371; *Chilliner* v. *Chilliner*, 2 Ves. 528; *Hardy* v. *Martin*, 1 Cox, 26; *Roper* v. *Bartholomew*, 12 Price, 796; *Logan* v. *Weinholt*, 1 C. & F. 611; 2 White & Tudor's Leading Cases in Equity, part 2, pp. 465, 466, 474, 475; *Gordon* v. *Brown*, 4 Iredell's Eq , 399; *Canal Co.* v. *Sanson*, 1 Binney, 70; *Brown* v. *Bellows*, 4 Pick. 158.

The penalty is construed as intended to secure the fulfillment of the contract and not to defeat it.

*Howard & Strout*, argued for the defendant.

The contract of the defendant was to give the plaintiff a *bond* to convey the real estate mentioned, upon the receipt of two hundred dollars, within ninety days from the date of the contract, or forfeit $200, "as liquidated damages;" if the $200, were paid within ninety days from the date of the contract.

The plaintiff paid the sum of $200, within the ninety days, and demanded the *bond*, but the defendant neglected and refused to give it; choosing to forfeit the $200, rather than to execute a bond, as he contends. And this, he claims that he had a right to do, by the terms of the contract, under the penalty of $200, "as liquidated damages."

The receipt of sums of money by the defendant, from the plaintiff, at subsequent dates, does not so far extend the *contract*, as the defendant alleges, as to authorize the plaintiff to claim a *bond* from him.

In the receipt of Feb. 23, 1856, the supposed extension

therein referred to, has reference to defendant's "*bond dated Feb.* 25, 1853," and speaks of "*the balance of said bond*" to be paid in one year from Feb. 25, 1856, "without infringing to either party on the privileges mentioned in said bond."

Whereas, in fact, no *bond* was ever given by the defendant to the plaintiff. The articles of agreement contemplated that a *bond* should be given upon certain conditions named in the agreement. But, in truth, no such *bond* was ever executed.

If the plaintiff is entitled to reclaim his money paid to the defendant, that would not enable him to maintain his bill; — for the law, in such case, would afford him ample remedy.

The defendant denies that he was ever bound to convey to the plaintiff; not by a *bond*, for none was ever given; nor by contract, for such was not the agreement.

The opinion of the Court was delivered by

GOODENOW, J. — The bill seeks to enforce a specific performance of a contract, made and executed by the parties on the 25th day of February, 1853. It alleges full performance on the part of the complainant, and a neglect and refusal to perform on the part of the defendant. The answer admits the making and executing the agreement or indenture, under seal, as recited in the complainant's bill; but alleges that the complainant never paid the sums of money mentioned in said indenture to be by him paid, to the defendant, in accordance with the terms of said indenture, or any of them, and has never performed the terms of said indenture, by him to be performed. And the defendant further says, that the complainant is not entitled to the relief by him sought in his said bill; but, if entitled to any thing, he is only entitled to recover at law the sum of two hundred dollars in said indenture mentioned, as liquidated ·damages, for any breach of its terms, by the defendant.

The complainant in his replication to the answer of the said defendant, says that he will aver and prove his said bill to be true, certain and sufficient in law to be answered unto;

and that the said answer of the defendant is uncertain, untrue and insufficient to be replied unto by the repliant.

We are satisfied that the material facts, alleged in the bill, and denied in the answer, are true, and are proved to be true, by the evidence exhibited by the complainant in the case.

Where a contract, respecting real property, is in its nature and circumstances unobjectionable, it is as much a matter of course for a Court of Equity to decree a specific performance, as it is for a Court of Law to give damages; and, generally, a Court of Equity will decree a specific performance, when the contract is in writing, is certain, and fair in all its parts, and is for an adequate consideration, and is capable of being performed. The form of the instrument, by which the contract appears, is wholly unimportant. Thus, if the contract appears only in the condition of a bond, secured by a penalty, the Court will act upon it as an agreement, and will not suffer the party to escape from a specific performance by offering to pay the penalty. 2 Story's Eq., § 751.

*Time* is not generally deemed in Equity to be the essence of the contract, unless the parties have so treated it, or it necessarily follows from the nature and circumstances of the contract. 2 Story's Eq., § 776. The parties have not so treated it in this case, as it clearly appears from the proof. Complainant has fully performed and offered to perform every thing on his part to be performed, and within the time, as extended by the defendant's consent. He is, therefore, entitled to a decree for specific performance as prayed for, upon bringing into Court and depositing with the clerk thereof the sum of eight hundred and sixty-five dollars, for the use of said Sturdivant or his legal representatives, and also depositing with said clerk such a receipt in full to said Sturdivant or his legal representatives as is provided for in and by said agreement.

TENNEY, C. J., and HATHAWAY, CUTTING, MAY, and DAVIS, J. J., concurred.