# SPRING SESSIONS,

## 1902.

J. Baker Bryan, d. b. a., *vs.* J. Frederick Brown, p. b. r.

*Appeal—Berry Tickets—Implied Promise to Pay—Prior Dealings — Custom—Presumption—Agreement.*

1. In an action brought to recover payment for certain berry checks, tickets or tokens that were issued by the defendant to berry pickers, and subsequently came into the possession of the plaintiff, a promise to pay may be implied from the prior dealings of the parties in reference to tickets of a similar character. But if at any time before the plaintiff took such tickets he was notified by the defendant not to take them, there could be no implied promise to pay the plaintiff for them, and under such circumstances he took them at his peril.

2. If there is a general and uniform custom, under which tickets of such character were traded off or sold by the holder, and taken up and paid by the employer, the jury may presume, in the absence of evidence to the contrary, that the parties to the action dealt with reference to that custom, and that they intended to be guided and bound in their duties towards each other by that custom. But a custom of trade cannot control or be read into an agreement between parties unless the circumstances be such as to justify the jury in inferring that the parties dealt with reference to that custom.

3. If, however, before the plaintiff took the tickets the defendant notified him not to take them, and warned him that they would not be paid unless they were presented by the person or persons to 'whom they were issued, this would be sufficient, even without the assent of the plaintiff, to rebut any such presumption.

4. If the defendant, when he issued the tickets, had an agreement with his pickers that he would pay a particular price, he would not be bound to pay them, nor anybody else, more than that price; but if he had no such agreement with his pickers, then he would be bound to pay the usual market price for that kind of work.

(*April 15, 1902.*)

Lore, C. J., and Spruance and Boyce, J. J., sitting.

*Edward D. Hearne* for appellant.

*John M. Richardson* and *Charles F. Richards* for respondent.

Superior Court, Sussex County, April Term, 1902.

APPEAL (No. 3, October Term, 1899).

The facts appear in the charge of the Court.

SPRUANCE, J., charging the jury:

Gentlemen of the jury:—This action was brought by J. Frederick Brown, the plaintiff below, against J. Baker Bryan, the defendant below, to recover the sum of $54.80, with interest from September 1, 1898, being the amount claimed for work done by certain persons unknown to us in picking berries for the defendant.

It appears by the evidence that when the work was done for the defendant he issued for it to the pickers certain tickets now in evidence, being pieces of pasteboard on which are printed the name of the defendant, J. Baker Bryan, and the number of quarts, or pints, which the picker had picked. These tickets have been called " checks," but they bear no sort of resemblance or relation to bank checks, and may be more properly called tokens. They contain no express promise to pay anybody anything, nor is there any evidence of any express promise on the part of the defendant to pay the plaintiff anything; but the plaintiff relies for his recovery upon an implied promise of the defendant.

It is not always necessary to entitle a party to recover money from another that he should prove an express promise to pay. There may be, and often are, circumstances under which the law implies a promise to pay. The plaintiff claims that he is entitled to recover from the defendant upon the defendant's implied promise to pay him the money claimed. The plaintiff bases his claim of an implied promise to pay him upon two grounds: first, the prior

dealings of the parties in reference to tickets or tokens of a similar character.

He claims that, in the year 1897, about a year before this transaction, he held certain tokens similar to these, which had been given out by the defendant under similar circumstances, and that the defendant, without objection, paid them, and he insists that he, therefore, had a right to infer or imply a promise to pay him for any other checks of a similar character at any time afterwards.

There is testimony on the other hand that, in 1897, when the tickets of a similar character were paid to the plaintiff, that he was notified by the defendant not to take any more of them, and that he promised that he would not. The plaintiff denies that any such notice was given to him or that he made any such promise.

That is a matter of fact for your determination, but if at that time, or at any time before the plaintiff took these tokens, he was notified by the defendant not to take them, there could be no implied promise to pay the plaintiff for them, and under such circumstances he took them at his peril.

The second ground of an implied promise is, that the parties dealt as to these tokens in reference to, and having in their minds, a custom of the business, which was to the effect that such tokens need not be presented for payment by the person who did the work, but that they might be sold to anybody who chose to give the money for them, and that the employer would take them up when presented by the holder, whoever he might be.

The intention of parties, not expressed or declared by them, may, in some cases, be ascertained by the usage or custom of the trade or business to which the transaction relates.

" It is not enough that it be the usage or custom of one of the parties to the contract, or of some persons engaged in the trade, but it must be the general usage or custom of those engaged in the trade at the place where the contract was made or was to be performed; so general that those who are there engaged in the trade are to be presumed to know of its existence."

" On the other hand, it is not necessary that such usage or custom should be universal, or that it should prevail all over the country. It is sufficient that it be general, uniform and notorious in the particular trade or business to which the contract relates, at the place where the contract was made or was to be performed."

*Fraser vs. Ross, 1 Pennewill, 349 (357).*

If there was such a general and uniform custom, under which tokens of this character were traded off or sold by the holder, and taken up and paid by the employer, you may presume, in the absence of evidence to the contrary, that the parties to this action dealt with reference to that custom, and that they intended to be guided and bound in their duties towards each other by that custom. But a custom of trade cannot control, or be read into an agreement between parties unless the circumstances be such as to justify the jury in inferring that the parties dealt with reference to that custom.

If, before the plaintiff took these tokens, the defendant notified him not to take them, and warned him that they would not be paid unless presented by the person or persons to whom they were issued, this would be sufficient, even without the assent of the plaintiff, to rebut the presumption which might otherwise arise from the prior dealings between the parties as to similar tokens, and also the presumption that the parties intended to be bound by any contrary customs of the trade. Whether such notice or warning was given to the plaintiff, or such an understanding was arrived at between these parties at any time prior to the plaintiff's taking these tokens, you are to determine from the evidence.

You will observe that these tokens do not set forth any price that was to be paid, but merely indicate the quantity of quarts or pints that were picked.

If the defendant, when he issued these tokens, had an agreement with his pickers that he would pay a particular price, he would not be bound to pay them, nor anybody else, more than that price; but if he had no such agreement with his pickers, then he would be bound to pay the usual market price for that kind of work.

If the plaintiff is entitled to recover anything, you are to determine whether there was any agreement between the defendant and his pickers as to the price, and if there was, that controls; and if there was not, then you are to determine from the evidence what was the market price; for it is a general rule that a man is bound to pay for work that is done for him what that work is worth in the market, *i. e.*, what was then generally paid in the neighborhood for work of a similar character.

Where the evidence, as in this case, is conflicting, the jury are the judges of the credibility of the witnesses and of the weight of the evidence. Under the instructions of the Court as to the law, your verdict should be for that party in whose favor is the preponderance or greater weight of the evidence.

Verdict for plaintiff for $66.72.